**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SONDRA EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-2560 (KBJ) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Pro se plaintiff Sondra Edwards is a former United States Postal Service employee and veteran who, since 1991, has received benefits from both the Department of Veterans Affairs ("VA"), for a service-connected disability, and the Department of Labor ("Labor"), for an on-the-job injury pursuant to the Federal Employees' Compensation Act ("FECA"). (*See generally* Am. Compl. ("Compl."), ECF No. 6; *see also* Notice of Proposed Rescission Decision, Attach. C to Gov't Ex. 1 of Mot. to Dismiss, ECF No. 8-4, at 21.)[1] In 2012, the Office of Workers' Compensation Programs ("OWCP")—a sub-agency that the Secretary of Labor has designated to manage claims for benefits under the FECA—determined that Edwards was improperly receiving dual benefits from both the VA and Labor for the same condition and terminated Edwards's FECA benefits. (*See* Compl. ¶ 4.) Edwards then spent years disputing that termination through the administrative appeals process, which resulted in the reinstatement of her FECA benefits. (*See id.* ¶ 5.) In the instant lawsuit, Edwards

---

[1] Page number citations to the documents that the parties have filed refer to those that the Court's electronic case filing system automatically assigns.

seeks money damages for OWCP's decision to terminate her FECA benefits in the first place; she alleges that this erroneous determination defamed her, constituted intentional and negligent infliction of emotional distress, and violated her rights under the Americans with Disabilities Act ("ADA").  (*See id.* ¶ 1.)

Before this Court at present is the Government's motion to dismiss, which argues that the Court lacks subject matter jurisdiction with respect to Edwards's tort claims (*see* Gov't Mem. in Support of Mot. to Dismiss ("Gov't Mem."), ECF No. 8-3, at 8–14), and that Edwards has failed to state a claim upon which relief can be granted under the ADA (*see id.* at 15–16).  As explained herein, the Court agrees with the Government's argument that it does not have jurisdiction over Edwards's tort claims, and it finds that this limitation on the Court's authority is for good reason.  The FECA statute expressly precludes judicial review of OWCP's actions in denying a payment under the statute, but it provides an administrative appeals process, of which Edwards has already availed herself.  And because that process has led to the termination decision being rescinded and the wrongfully withheld benefits being restored, the money damages that Edwards now claims as a result of the allegedly tortious termination of her FECA benefits have, in essence, already been provided.  Therefore, this Court lacks power to order anything more, and the Government's motion to dismiss the claims in Edwards's complaint will be **GRANTED**.  A separate Order consistent with this Memorandum Opinion will follow.

I.     BACKGROUND

A. Factual Background[2]

Pro se Plaintiff Sondra Edwards worked for the United States Postal Service until 1990, and prior to that, she served in the United States Air Force.  (*See* Compl. ¶ 18; Notice of Occupational Disease and Claim for Compensation, Attach. A to Gov't Ex. 1, at 15; Oct. 6, 2017, Letter from Adam Calendrillo, Attach. W to Gov't Ex. 1, at 155.) Due to a disability that resulted from her military service, Edwards has received benefits from the Department of Veterans Affairs ("VA") since at least 1989.  (*See* Notice of Occupational Disease and Claim for Compensation, Attach. A to Gov't Ex. 1, at 16.)  In 1990, while working for the Postal Service, Edwards suffered an additional injury caused by the alleged harassment of her supervisors, and she submitted a claim to Labor for compensation under the FECA.  (*See id.* at 14.)  In 1991, Labor accepted Edwards's FECA claim in relation to "the condition major depressive episode." (Feb. 6, 1991, Letter from Heidi Lempert, Attach. B to Gov't Ex. 1, at 18.)

Approximately twenty years later, in 2011, OWCP changed Edwards's medical condition from "Major Depressive Disorder" to "Aggravation of Major Depressive Disorder" in its records.  (*See* Notice of Decision, Attach. D to Gov't Ex. 1, at 27.) OWCP sent Edwards a letter notifying her of the change, and she alleges that, along

---

[2] Although Edwards's amended complaint is not clear regarding the facts surrounding OWCP's decision to terminate her benefits, the Government's motion to dismiss includes nearly 200 pages of attached exhibits that are relevant to the agency action at issue in this case including letters exchanged between OWCP and Edwards,.  When reviewing a motion to dismiss for lack of subject matter jurisdiction, courts may consider exhibits attached to the parties' filings so long as all factual allegations in the complaint are accepted as true, *see Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005), and Edwards does not dispute the authenticity of the documents that the Government has provided (*see* Pl.'s Opp'n, ECF No. 10, at 1).  Therefore, in recounting the facts underlying Edwards's claims, this Court has referenced not only the complaint but also the exhibits attached to the parties' briefs.

with this correspondence, the agency included a letter addressed to another veteran, along with his private medical information.  (*See* Compl. ¶ 1; Apr. 10, 2017, Claim for Damage, Injury, or Death, Attach. A to Gov't Ex. 2 to Mot. to Dismiss, ECF No. 8-5, at 7.)  Edwards forwarded the information to the other veteran, after which she received a call from an OWCP employee who allegedly screamed at her because she had exposed the agency's violation of the Health Information Protection Privacy Act ("HIPPA"). (*See* Compl. ¶ 1.)  According to Edwards, OWCP then began to retaliate against her (*see* Compl. ¶ 6; Pl.'s Opp'n, ECF No. 10, at 8), and to this end, on May 19, 2011, OWCP briefly terminated the payment of Edwards's FECA benefits (*see* June 18, 2020, Letter, Ex. 1 to Pl.'s Response, ECF No. 12-1, at 35).[3]

In the months that followed, OWCP began to investigate whether Edwards was impermissibly receiving dual benefits for her condition from both OWCP and the VA. (*See* Compl. ¶ 2; *see also* Nov. 14, 2011, Letter from Darryl K. Parker, Attach. E to Gov't Ex. 1, at 31.)  In 2012, OWCP informed Edwards that the agency had determined that she was receiving dual benefits from both agencies, and that dual benefits are prohibited by FECA.  (*See* Jan. 17, 2011, Letter from Darryl K. Parker, Attach. F to Gov't Ex. 1, at 39 (explaining that dual benefits exist where an "injury sustained while in Federal civilian employment" results in both "[a]n increase in a veteran's service connected disability" and "workers' compensation wage-loss benefits"); *see also* Compl. ¶ 3.)   And when Edwards failed to respond by electing to receive either the VA benefits or the FECA benefits, by default, Edwards's FECA benefits were terminated.

---

[3] This termination was vacated, and Edwards's benefits were reinstated on November 7, 2011, on the grounds that OWCP had relied on the report of a second-opinion physician that was based on incorrect facts.  (*See* Compl. ¶ 1–2; *see also* June 18, 2020, Letter, Ex. 1 to Pl.'s Response, ECF No. 12-1, at 35.)

(*See* May 17, 2012, Letter from Darryl K. Parker, Attach. G to Gov't Ex. 1, at 46; *see also* Compl. ¶ 3.)  Edwards timely requested reconsideration of this termination decision, but OWCP found that the evidence Edwards provided was unpersuasive.  (*See* Aug. 10, 2012, Letter from Alida V. Anderson, Attach. K to Gov't Ex. 1, at 80–83.)

In September of 2012, OWCP informed Edwards that the agency had made a preliminary determination that she had been "overpaid benefits in the amount of $440,345.92" and provided instructions for her to dispute that overpayment amount. (Sept. 25, 2012, Letter from Helen Ferro, Attach. H to Gov't Ex. 1, at 52; *see also* Compl. ¶ 4.)  Edwards failed to dispute that determination, and OWCP finalized its overpayment determination in November of 2012.  (*See* Nov. 13, 2012, Letter from Helen Ferro, Attach. I to Gov't Ex. 1, at 66–67.)  And given Edwards's failure to take steps to refute or repay the purported overpayment, OWCP considered the debt delinquent and, in May of 2013, referred the overpayment amount to Treasury for collection.  (*See* Debt Referral for Treasury, Ex. 10 to Pl.'s Response, ECF No. 12-1, at 37; *see also* Attach. J to Gov't Ex. 1, at 73.)

Meanwhile, in early 2013, Edwards participated in a "formal hearing" at the VA regarding the issue of dual benefits.  (Compl. ¶¶ 3, 4.)  According to Edwards, the VA determined that she was not receiving dual benefits (*see id.* ¶ 4), and based on the VA's determination in this regard, Edwards sought reconsideration of OWCP's termination decision, which OWCP ultimately denied (*see* June 4, 2013, Letter from Stephanie Fenton, Attach. J to Gov't Ex. 1, at 90–91; *see also* Compl. ¶ 4).  In August of 2013, Edwards appealed OWCP's denial of reconsideration to the Employees' Compensation Appeals Board ("ECAB") (*see* Feb. 10, 2014, ECAB Decision and Order, Attach. M to

Gov't Ex. 1, at 93), but because Edwards had failed to challenge directly the merits of OWCP's prior decisions to terminate her FECA benefits and to assess the $440,345.92 overpayment amount, ECAB only had jurisdiction to review the "nonmerit[s] decision" of the agency's denial of Edwards's request for reconsideration.  (*Id.*)  ECAB found that OWCP properly denied the request for reconsideration.  (*See id.* at 96.)

Edwards sought reconsideration several more times; appealed one such denial to ECAB again; and then filed a request for reconsideration from ECAB—none of which was availing.  (*See* Mar. 14, 2014, Letter from Christina Steven, Attach. N to Gov't Ex. 1, at 99; Dec. 18, 2015, Letter from Kevin Burke, Attach. Q to Gov't Ex. 1, at 115; Jan. 29, 2016, Letter from Kristina A. Oettel-Barber, Attach. R to Gov't Ex. 1, 125; Feb. 17, 2016, Letter from Tonya Taylor, Attach. S to Gov't Ex. 1, at 128.)  Edwards also wrote letters to the Secretary of Labor and other Labor officials asking for help to "correct" the record regarding "[her] diagnosis and [to] remove that bogus debt[.]" (Feb. 9, 2016, Letter from Sondra Edwards, Attach. T to Gov't Ex. 1, at 133; *see also* July 19, 2016, Letter from Sondra Edwards, Attach. U to Gov't Ex. 1, at 138; Aug. 6, 2016, Letter from Sondra Edwards, Attach. V to Gov't Ex. 1, at 142; Compl. ¶ 11.)  Each letter was forwarded to OWCP, and the agency repeatedly sent letters to Edwards in response. (*See* Feb. 19, 2016, Letter from Christel Porter-Keefer, Attach. T to Gov't Ex. 1, at 135; Aug. 15, 2016, Letter from Tisha Carter, Attach. U to Gov't Ex. 1, at 139; Aug. 17, 2016, Letter from Tisha Carter, Attach. V to Gov't Ex. 1, at 146.)  Edwards also alleges that the Secretary engaged in intimidation tactics to cause her to "be quiet, and not seek help."  (Compl. ¶ 11.)

Edwards further maintains that OWCP's erroneous dual-benefits decision, termination of her FECA benefits, and referral of the mistaken overpayment debt to Treasury harmed her in a variety of ways, including causing her to suffer homelessness (*see id.* ¶ 5); to endure a robbery at gunpoint (*see id.* ¶ 6); to encounter bed bugs (*see id.* ¶ 9); to sustain fractured family relationships and issues with life insurance/credit (*see id.* ¶¶ 10, 14); and to have both a stroke and continuing and new mental health issues (*see id.* ¶¶ 15–16).  On April 10, 2017, Edwards filed her first claim for money damages with Labor, "seeking $440,345.92 in personal damages pursuant to the [Federal Tort Claims Act ("FTCA")]" for several alleged wrongdoings by OWCP. (Declaration of Catherine P. Carter, Ex. 2 to Def.'s Mot., ECF No. 8-5, ¶ 2.)[4]

By letter dated October 6, 2017—five years after Edwards was deemed ineligible for FECA benefits under the dual benefits standard, four years after a six-figure overpayment debt was referred for collection, and six-months after she first filed her claim for damages with Labor—OWCP informed Edwards that its prior determinations had been vacated.  (*See* Compl. ¶ 14; Oct. 6, 2017, Letter from Adam Calendrillo, Attach. W to Gov't Ex. 1, at 149.)  OWCP explained that there was evidence in her file that she was not being dual compensated, and that the dual compensation issue had been raised and decided in 1998.  (*See* Oct. 6, 2017, Letter at 151.)  As a result, OWCP informed Edwards that she was entitled to reinstatement of her FECA benefits and that the overpayment debt would be "declared null and void."  (*Id.* at 153–54.)  In addition,

---

[4] In this first administrative claim for money damages, Edwards alleged that OWCP engaged in the following wrongful acts: changing her accepted medical condition, sending her the medical information of another person, reviewing her file for dual compensation as retaliation, forcing her to choose between VA and FECA benefits, lying to the VA about her medical condition, and referring a debt of $440,345.92 to Treasury for collection.  (*See* Apr. 10, 2017, Claim for Damage, Injury, or Death, Attachment B to Ex. 2, ECF No. 8-5, at 7–11.)

Edwards received payment in the amount of $156,771.07 for the years in which her FECA benefits were not tendered due to the agency's termination decision.  (*See* Oct. 13, 2017, Payment, Attach. X to Gov't Ex. 1, at 7.)  Notably, according to the complaint, Edwards has declined the reinstatement payments that the agency has tendered to her, out of fear of "retaliation and death[.]"  (Compl. ¶ 14.)

On October 15, 2017, after OWCP's decisions were vacated,  Edwards filed a second claim for money damges with Labor's Office of the Solicitor, again seeking $440,345.92 based on the Office of the Secretary's failure to intervene and correct OWCP's wrongful determinations concerning the termination of her FECA benefits. (*See* Oct. 15, 2017, Claim for Damage, Injury, or Death, Attach. B to Ex. 2, at 13–15.) On May 24, 2018, Labor denied both of Edwards's damages claims "on the ground that the FECA is the exclusive remedy for federal employees who suffer work-related injuries, including damages resulting from the tortious conduct of government actors in handling work-related injuries[,]" and "the [Federal Tort Claims Act ("FTCA")] expressly bars claims for defamation, fraud, and abuse of process."  (*Id.* at ¶ 4.)

## B.  Procedural Background

Edwards originally filed the instant lawsuit in the United States Court of Federal Claims; the matter was transferred to this Court on November 5, 2018.  (*See* ECF No. 1.)  Edwards amended her complaint against the United States on February 15, 2019. (*See* Amend. Compl. ("Compl."), ECF No. 6.)  Edwards's amended complaint is less than clear, but she appears to be making two types of legal claims throughout.  First, Edwards brings tort claims pursuant to the FTCA, alleging that OWCP's conduct intentionally and negligently inflicted emotional distress and defamed her.  (*See, e.g.*,

Compl. ¶¶ 1, 2, 3, 6, 11, 13, 14, 18.)  Second, Edwards claims that OWCP's conduct

violated the ADA.  (*See id.* ¶ 1, 14.)

The Government filed a motion to dismiss on March 29, 2019.  (*See* Gov't Mot.

to Dismiss ("Gov't Mot."), ECF No. 8).  In its motion, the Government, first, argues

pursuant to Federal Rule of Civil Procedure 12(b)(1) that this Court lacks subject matter

jurisdiction over Edwards's tort claims, because the FECA is the exclusive remedy for

the tortious conduct of OWCP in administering Edwards's claim, or in the alternative,

that most of Edwards's claims are time-barred and that the actions of OWCP are

excluded from judicial review by the FTCA's discretionary function exception.  (*See*

Gov't Mem. in Supp. of Mot. to Dismiss ("Gov't Mem."), ECF No. 8-3, at 8–14.)  The

Government further alleges, pursuant to Rule 12(b)(6), that Edwards has failed to state

an ADA claim against the United States because federal actors are not subject to the

ADA.  (*See id.* at 15–16.)

Edwards filed an opposition on May 1, 2019 (*see* Pl.'s Opp'n to Mot. to Dismiss

("Pl.'s Opp'n"), ECF No. 10); the Government filed a reply on May 10, 2019 (*see* Gov't

Reply to Pl.'s Opp'n, ECF No. 11); and Edwards filed another response on May 17,

2019 (*see* Pl.'s Response to Mot. to Dismiss ("Pl.'s Response"), ECF No. 12).  In her

responsive briefs, Edwards realleges the claims that she makes in the amended

complaint and she also claims that OWCP's actions violated her constitutional rights

(*see* Pl.'s Opp'n at 3, 5, 7, 13–22) and rights under several other federal statutes;

namely, sections 1983, 1985, and 10801 of Title 42 of the United States Code, and also

HIPPA (*see id.* at 3, 12).  Because "[i]t is a well-established principle of law in this

Circuit that a plaintiff may not amend her complaint by making new allegations in her

opposition brief[,]" the new claims that Edwards brings only in her opposition briefs are not before the Court at present. *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014).

## II.    MOTIONS TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

A motion to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's power to entertain the plaintiff's legal claims.  In order to withstand a Rule 12(b)(1) motion, "the plaintiff bears the burden of establishing [the court's] jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  When reviewing such a motion, "the district court may consider materials outside the pleadings[.]" *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (internal quotation marks and citation omitted).  However, "the court must still accept all of the factual allegations in [the] complaint as true[.]" *Id.*  Yet, "[b]ecause Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (citations omitted).

By contrast, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint's factual allegations. *See Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012).  As a result, courts reviewing a motion to dismiss under Rule 12(b)(6) must accept as true all of the plaintiff's allegations of fact, and must also "grant plaintiff the

benefit of all inferences that can be derived from the facts alleged[.]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); *see also Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 134 (D.D.C. 2013).  To survive such a motion, the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the complaint's "factual content . . . [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Rule 12(b)(1) and Rule 12(b)(6) motions vary in a number of ways.  For one thing, Rule 12(b)(6) "places th[e] burden on the moving party" to show that the complaint is legally insufficient.  *Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2015)).  Also in contrast to a motion to dismiss brought under Rule 12(b)(1), a court assessing whether a complaint states a claim upon which relief can be granted must limit its analysis to the four corners of the complaint, as well as any "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies[.]" *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013) (internal quotation marks and citations omitted).

Finally, the Court is cognizant that, in the instant case, the Government is seeking Rule 12(b)(1) and Rule 12(b)(6) dismissal of a complaint that the plaintiff has filed pro se. It is well established that a court must "liberally construe[]" the pleadings of pro se parties, and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, it is also quite clear that "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). Thus, although a pro se complaint "must be construed liberally, the complaint must still present a claim on which the Court can grant relief." *Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (internal quotation marks and citation omitted); *see Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that "a pro se plaintiff's inferences . . . need not be accepted" if they "are unsupported by the facts set out in the complaint" (internal quotation marks and citation omitted)).

## III.   ANALYSIS

As previously explained, the Government seeks dismissal of Edwards's tort claims on the grounds that this Court lacks subject matter jurisdiction over them, because the FECA is the exclusive remedy for Edwards's tort claims or, in the alternative, because the claims are barred by the FTCA's statute of limitations and discretionary functions exception. (*See* Gov't Mem. at 8–14.) The Government further asserts that Edwards has failed to state a claim under the ADA because the federal

government is not a proper defendant under the ADA.  (*See id.* at 15–16.)  For the reasons explained below, this Court finds that the FECA bars judicial review of claims arising from OWCP's actions in denying a payment under the statute, including claims styled as common-law torts.  The Court also agrees that Edwards cannot maintain an ADA claim against the federal government.  Thus, Edwards's complaint must be dismissed in full.

### A. This Court Lacks Subject Matter Jurisdiction Over Edwards's Tort Claims Because The FECA Bars Judicial Review Of Agency Actions That Relate To Its Administration Of Claims Under The Statute

Under the FECA, the United States must "pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty[.]" 5 U.S.C. § 8102(a).  The compensation provided for in the FECA is the exclusive remedy for a federal employee's on-the-job injury, *see id.* § 8116(c), and that statute is intentionally "designed to protect the Government from suits under statutes, such as the [FTCA], that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94 (1983).  "In enacting [the FECA's exclusive-remedy] provision, Congress adopted the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Id.* at 194 (citations omitted).

The Secretary of Labor is tasked with "administer[ing], and decid[ing] all questions arising under [the FECA][,]" and the Secretary may delegate those powers. 5 U.S.C. § 8145.  The Secretary has delegated the administration of the FECA to OWCP,

*see* 20 C.F.R. § 10.1, which means that OWCP is empowered to "review an award for or against payment of compensation at any time[,]" and it may "(1) end, decrease, or increase the compensation previously awarded; or (2) award compensation previously refused or discontinued." 5 U.S.C. § 8128(a).  To challenge a benefits determination that OWCP makes, a claimant may request "reconsideration by the district office; a hearing before an OWCP hearing representative; and appeal to the Employees' Compensation Appeals Board (ECAB)." 20 C.F.R. § 10.600.

Significantly for present purposes, Congress has made it crystal clear that OWCP's act of "allowing or denying a payment" is both "final and conclusive for all purposes and with respect to all questions of law and fact[,]" and is "not subject to review by another official of the United States *or by a court* by mandamus or otherwise." 5 U.S.C. § 8128(b) (emphasis added).  "The Supreme Court has recognized § 8128(b) as an example of 'Congress intend[ing] to bar judicial review altogether,' given the provision's 'unambiguous and comprehensive' language." *Hall v. Dep't of Labor*, 289 F. Supp. 3d 93, 99 (D.D.C. 2018), *aff'd sub nom. Hall v. United States Dep't of Labor*, No. 18-5100, 2018 WL 5919255 (D.C. Cir. Nov. 1, 2018) (quoting *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779–80 & n.13 (1985)).[5]

It is under this scheme that Edwards now seeks to vindicate the allegedly tortious acts of the OWCP officials who administered her claim.  The alleged injury to Edwards did not arise while in the "performance of [her] duty" as a federal employee, 5 U.S.C. § 8102(a), but her action falls under the FECA nevertheless, as it is clear that the

---

[5] The one narrow exception to this jurisdictional bar that the D.C. Circuit has recognized—i.e., that the FECA does not prevent "judicial review of constitutional challenges[,]" *Lepre v. Dep't of Labor*, 275 F.3d 59, 67 (D.C. Cir. 2001)—is not at issue in this case.

alleged breach of duty that is the basis for Edwards's tort claims is the agency's improper termination of her benefits (*see* Pl.'s Opp'n at 1); *see also Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 155 (D.D.C. 2018) (holding that plaintiff's claim that FECA "benefits were improperly suspended" is "squarely within the jurisdictional bar of § 8128(b)").   To sidestep this conclusion, Edwards insists that "the initial case was won" with OWCP's vacatur of its decisions and reinstatement of her benefits, and that she has filed the instant lawsuit only to seek "damages" for harmful effects of OWCP's improper termination.   (Pl.'s Opp'n at 1.)   But a court's jurisdiction is established based on the nature of the claim that has been made, not on the basis of the harm that is alleged to have resulted from the defendant's unlawful behavior.   *See Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 18 (D.D.C. 2013) ("[W]hether the Court has subject-matter jurisdiction depends on the nature of plaintiff's claims.").   And where a plaintiff seeks to challenge an unfavorable OWCP determination regarding FECA benefits, entertaining that claim under the guise of a common law tort would work an improper back-door to judicial review of OWCP payment decisions under circumstances in which Congress has made clear that the merits of such decisions are not subject to judicial review.   *See* 5 U.S.C. § 8128(b).

What is more, there appears to be no precedent for exercising jurisdiction over a plaintiff's claims when presented with similar facts.   Indeed, courts have universally concluded that injuries sustained as a result of OWCP's termination of FECA benefits "derive from" OWCP's benefits determination such that they are exclusively covered by FECA, and therefore, judicial review is precluded.   *See, e.g., Banks v. United States*, 190 F. Supp. 3d 618, 628 (E.D. Tex. 2016) (holding that claims for medical and legal

expenses incurred as a result of improper termination of FECA benefits "fall within FECA's preclusion on judicial review" because "[n]o liability could be assessed in this case without first examining the conclusions of law and fact made by the Secretary in the FECA benefits determination"); *Tidwell v. U.S. Dep't of Labor Office of Workers' Comp. Program*, No. C 11-06393 DMR, 2012 WL 4497802, at *3 (N.D. Cal. Sept. 28, 2012) (holding that plaintiff's statutory and tort law claims "all ultimately constitute challenges to his unfavorable FECA determination or attempts to recover damages from the government for his work-related injuries through non-FECA avenues"); *Proctor v. United States*, No. 5:11-CV-27-BR, 2011 WL 3626688, at *4 (E.D.N.C. Aug. 17, 2011) (finding that "although plaintiffs' claims are couched in tort language . . . , the true crux of their argument is that the OWCP wrongfully and negligently reduced [plaintiff-husband's] FECA benefits" and "[t]hus, plaintiffs essentially seek to have the court independently review the substance of this decision to reduce [his] benefits").

This is not to say that Edwards has not been injured due to OWCP's erroneous decision to terminate her benefits. (*See, e.g.*, Compl. ¶¶ 5, 10, 15, 16 (alleging that homelessness, fractured relationships with family and friends, and worsening physical and mental health conditions, among other things, resulted from the termination of her benefits).) But Congress has provided an exclusive remedy for obtaining relief for the agency's allegedly wrongful, and potentially harmful, termination of payments: the administrative review and appeals process, and, here, that process plainly worked to Edwards's benefit. *Cf. Proctor*, 2011 WL 3626688, at *5 (noting that plaintiff "did successfully obtain retroactive benefits through the administrative process, a fact that militates against the court's exercising jurisdiction over this case" (internal quotation

marks and citation omitted)).  Regardless, and in any event, it is clear that this Court

lacks jurisdiction to adjudicate claims against the Government for additional monetary

relief, because the FECA precludes judicial review of tort claims that pertain to

OWCP's erroneous termination of benefits, for the reasons explained above.

### B.  Edwards Has Not Stated A Cognizable Claim Under The ADA

Edwards's attempt to bring an ADA claim against the United States (*see* Compl.

¶¶ 1, 14) fails for the very simply reason that the ADA does not apply to the federal

government.  *See Mitchell v. Pompeo*, No. 1:15-CV-1849 (KBJ), 2019 WL 1440126, at

*5 (D.D.C. Mar. 31, 2019).  It is crucial to note that the scope of the ADA is

demarcated by three general provisions that prohibit certain entities from discriminating

against individuals with disabilities:  Title I prohibits employment discrimination, *see*

42 U.S.C. § 12112; Title II prohibits discrimination in "the services, programs, or

activities of a public entity[,]" 42 U.S.C. § 12132; and Title III prohibits discrimination

by "public accommodations[,]" 42 U.S.C. § 12181.  The statute thus prescribes the

categories of defendants who can be subjected to suit under each Title of the ADA, and

courts have long held that none of the titles is directed toward the federal government.

*See Bean v. Perdue*, No. CV 17-0140 (RC), 2017 WL 4005603, at *4 (D.D.C. Sept. 11,

2017) (explaining that "employer" under Title I "does not include [ ] the United States";

that "public entity" under Title II covers only "any State or local government" and/or

state and local departments or instrumentalities; and that Title III "prohibits

discrimination by 'public accommodations,' [and] only applies to enumerated types of

private entities").

Consequently, Edwards has not, and cannot, state a cognizable claim against the federal government under the ADA, and thus, this claim, too, must be dismissed.

## IV.  CONCLUSION

This Court has no doubt that, as a result of her FECA benefits lapsing and OWCP's referral of a six-figure debt for collection, Edwards has suffered greatly.  But Congress has clearly set out an administrative compensation scheme under the FECA, and it has made clear that even erroneous decisions of OWCP are not reviewable by a federal court.  To be sure, Edwards has presented her claims as common law torts brought under the FTCA, but any alleged injury plainly arises from OWCP's decision to terminate her benefits, which this Court has no jurisdiction to review.  And this Court further finds that Edwards has not stated a viable ADA claim against the Government, because the federal government is not amenable to suit under the ADA.  Accordingly, pursuant to Rules 12(b)(1) and 12(b)(6) and as reflected in the accompanying Order, the Government's motion to dismiss Edwards entire complaint must be **GRANTED**.

DATE:  May 29, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge